UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENNAN HANOUSEK,

    Plaintiff,

v.                                                  Case No. 8:21-cv-00572-TPB-CPT

UNITED STATES OF AMERICA,

    Defendant.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff sued the United States after an employee of the Department of Veterans Affairs exerted physical force against him and caused him to be wrongfully arrested. Having considered the testimony of the witnesses, the documentary evidence, and the argument of counsel, the Court makes the following findings of fact and conclusions of law. The Court finds that Defendant is liable for battery, assault, false imprisonment, false arrest, and malicious prosecution, and accordingly, Plaintiff is entitled to compensation for his pain and suffering and his time in jail.

## Findings of Fact

1. Plaintiff served in the Army from approximately 1990 through approximately 2001, and he received an honorable discharge.

2. Around 2015, Plaintiff began seeking treatment at medical centers operated by the Department of Veterans Affairs ("VA") for Post-Traumatic Stress

Disorder ("PTSD"). He consistently reported symptoms associated with PTSD, such as being hypervigilant, experiencing explosive anger, struggling with alcohol abuse, having nightmares, having suicidal thoughts, and being triggered by the sight or smell of blood.

3. On June 7, 2018, Plaintiff presented at a VA facility in Orlando with suicidal thoughts and a plan to jump off a building. Personnel at the Orlando VA directed Plaintiff to the Bay Pines VA in St. Petersburg, Florida, and provided services to transport Plaintiff from Orlando to St. Petersburg. On June 15, 2018, at approximately 8 p.m., Plaintiff presented at the Bay Pines VA emergency department seeking treatment. Plaintiff did not have an appointment. Police Officer Norman Nicholson, an employee of Defendant, ordered Plaintiff to leave and return the next day.

4. Plaintiff returned at approximately 12:57 a.m. on June 16, 2018. He checked in at the front desk and sat in the waiting room. A few minutes later, Mr. Nicholson approached Plaintiff and gestured for him to leave. Plaintiff complied. Mr. Nicholson exclaimed, "you are not a vet; get out of here."

5. Plaintiff walked along the sidewalk away from the Bay Pines VAMC building and toward one of the Bay Pines VAMC exits. Mr. Nicholson chased Plaintiff out of the building and caught up to him. Mr. Nicholson ordered Plaintiff to stop, and Plaintiff again complied.

6. Following Mr. Nicholson's instructions, Plaintiff placed his hands behind his back. Next, Mr. Nicholson swung Plaintiff around, and placed him in

handcuffs. Mr. Nicholson forced Plaintiff's head into a metal fence and pulled one of Plaintiff's legs back so that Plaintiff would fall. Plaintiff fell face-first to the ground, where he remained until additional officers arrived. Mr. Nicholson then pulled Plaintiff up from behind by grabbing Plaintiff's face and nose, pulling Plaintiff's head back. This entire interaction between Mr. Nicholson and Plaintiff is captured on video.

      7.     Mr. Nicholson authored a sworn, and false, affidavit, in which he stated the following: Plaintiff "did present to the Bay Pines Emergency Department hours prior and due to his yelling and swearing at staff and refusing to comply with staff directions was directed off property. At approximately 1:00 hours the [Plaintiff] again presented to the ED and was unsteady on his feet slurring his words and had an odor of alcoholic beverages emanating from him. The administrator on duty asked the [Plaintiff] to depart. [Plaintiff] refused and was in the process of being escorted off property when he suddenly turned and in an aggressive posture raising his hand towards this officer's face and stated 'back the fuck off my ass before I drop you motherfucker.' At this point he was placed under arrest. While attempting to handcuff the [Plaintiff] he became resistant and pulled away. Once the handcuffs were in place he buckled his knees in an attempt to make himself dead weight causing both of us to tumble to the ground. [Plaintiff] continued to resists and had to be forcibly placed into the cruiser for transport" (typos in original). Mr. Nicholson also stated the following in an official police report: "At this point, I advised him he was under arrest. While attempting to

handcuff [Plaintiff] he became resistant and would not obey commands to stop resisting and lean[ed] against a nearby fence.  He pulled away and tensed up his arms several times . . . I was finally able to overcome his resistance . . . [Plaintiff] continued again to resist on the ground until back up officers arrived.  [Plaintiff] refused to stand on his own." Mr. Nicholson's statements in his affidavit and official police report were false, and Mr. Nicholson made these false statements with an intent to impede, obstruct, or influence a matter within the jurisdiction of the United States Department of Veterans Affairs, a department of Defendant.

      8.      Plaintiff was booked into the Pinellas County jail on June 16, 2018, at 2:06 a.m.  He was released from custody on June 16, 2018, at 5:51 p.m., on condition that he wear a CAM ankle monitor.  In total, Plaintiff spent sixteen hours in jail on June 16, 2018.

      9.      Immediately after being released from custody, Plaintiff went to a Walmart Garden Center, located a pair of shears, and cut off his ankle monitor.  In his mind, this unfortunate decision was necessary, because he believed that leaving the ankle monitor on his body would invite discrimination at the VA and prevent him from receiving a proper medical evaluation.

      10.      After cutting off the ankle monitor, Plaintiff immediately returned to the Bay Pines VA, seeking admission to its PTSD program.  He reported that the basis for his PTSD was an incident when he was in the military and witnessed a soldier being bitten by a shark in Somalia.  A nurse conducted a skin risk and wound assessment and observed that Plaintiff had a bruise on his shoulder.

Plaintiff reported his pain as a 0.  On June 18, 2018, a primary care physician conducted a physical examination of Plaintiff, and Plaintiff again reported his pain was a 0.

11. Plaintiff was discharged from the Bay Pines VA on June 22, 2018.  At that time, he was taken to the Pinellas County jail on a warrant that had been issued because of his removal of his ankle monitor.  He was released from jail on July 12, 2018, and the frivolous criminal charges brought against him were dropped.

12. Plaintiff returned to the VA for treatment on July 13, 2018, at around 4 a.m.  While there, he identified a shark attack and things he saw while on a medivac unit as sources of psychological trauma.  He related that he cannot sleep well and suffers from nightmares about those experiences.  He also reported suffering from bilateral wrist pain at intensity level 3 and chronic back pain at intensity level 5.

13. Over the next several years, Plaintiff continued to seek PTSD treatment from the VA, consistently attributing his symptoms to some combination of the shark attack he witnessed, his work on the medivac unit, and his experience being under mortar fire.  He never told anyone at the VA that he was experiencing mental health symptoms resulting from the altercation he had with Officer Nicholson.  He explains this omission by claiming that he feared the VA might try to cover up evidence or complicate his disability paperwork.

14. On November 26, 2018, the VA determined that Plaintiff is 100% disabled as a result of his service-connected unspecified trauma and stressor-related disorders and diagnosed him with major depressive disorder and alcohol-use disorder. As such, Plaintiff will receive benefits for the rest of his life, which include free treatment at any VA facility for his mental and emotional health difficulties.

15. Plaintiff met with Dr. Valerie McClain so that she could determine whether he suffered any psychological distress or impact related to the arrest and provide an opinion to the Court. Dr. McClain did not opine that Plaintiff suffered any new or heightened symptoms resulting from his encounter with Mr. Nicholson, or that any PTSD treatment Plaintiff received at the VA would be ineffective. In fact, she conceded that Plaintiff's need for the medical treatment she recommended pre-dates his arrest. Dr. Sue Ann Garrison, a witness called by the Defendant, opined that the VA could effectively treat Plaintiff's mental health issues at no cost to him.

16. Mr. Nicholson was criminally prosecuted by the United States for his actions as described above and ultimately sentenced to twenty-four months in prison. *See U.S. v. Nicholson*, Case No. 8:19-cr-447 (M.D. Fla. 2019).

## Conclusions of Law

*Claims against Defendant*

17. Mr. Nicholson is an officer as defined in 28 U.S.C. § 2680(h).

18. Defendant, as Mr. Nicholson's employer, admitted liability for battery, assault, false imprisonment, and false Arrest in Plaintiff's Exhibit 2.

19. Malicious prosecution requires (1) the commencement or continuation of an original civil or criminal judicial proceeding; (2) its legal causation by the present defendant against a plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice; and (6) damages to the plaintiff. *Duval Jewelry Company v. Smith*, 136 So. 878 (Fla. 1931).

    a. Defendant endorsed Mr. Nicholson's false representations.

    b. The State of Florida relied on Defendant's endorsement of Mr. Nicholson's false representations.

    c. The State of Florida criminally prosecuted Plaintiff based on the false representations, then later dropped the charges.

    d. Mr. Nicholson's false representations were made with malice, to deprive Plaintiff of constitutional rights, and with knowledge that the State of Florida would charge Plaintiff with a crime in reliance on the statements.

20. Defendant is liable on all counts:

    a. Count I: Battery

    b. Count II: Assault

    c. Count III: False Imprisonment

    d. Count IV: False Arrest

    e. Count V: Malicious Prosecution

21. Defendant's actions are the proximate cause of damages to Plaintiff.

22.     Defendant has waived sovereign immunity and shall be treated as a private individual.

***Damages***

23.     "The components and measure of damages in FTCA claims are taken from the law of the state where the tort occurred." *Johnson v. United States*, 780 F.2d 902, 907 (11th Cir. 1986).  Because the torts here occurred in Florida, Florida law supplies the components and measure of damages.  The Florida legislature has not prescribed a method for calculating damages for false arrest or false imprisonment, but "damages recoverable in an action for false imprisonment include bodily injury, physical suffering, physical inconvenience and discomfort, loss of time, losses in the plaintiff's business or employment, and expenses incurred due to the imprisonment." *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1117 (11th Cir. 2006).  "Damages are also recoverable for mental suffering such as embarrassment, humiliation, deprivation of liberty, and disgrace and injury to a person's feelings and reputation." *Id*.  Under Florida law, economic damages cannot be founded on speculation or guesswork.  *See Smith v. Austin Devel. Co.*, 538 So. 2d 128, 129 (Fla. 2d DCA 1989) ("Although uncertainty as to the amount of damages . . . will not preclude recovery, there must be some reasonable basis in the evidence to support the amount awarded.").  The burden rests on the party seeking damages "to present evidence to justify an award of damages in a definite amount." *Id*.  "A noneconomic damages award cannot be sustained if it is inordinately large, shocks the judicial conscience as having no reasonable evidentiary basis, or has been

unduly influenced by passion or prejudice." *Subaqueous Servs., Inc. v. Corbin*, 25 So. 3d 1260, 1269 (Fla. 1st DCA 2010).

24. Under Florida's Victims of Wrongful Incarceration Compensation Act, §§ 961.01-.07, F.S., an individual wrongfully convicted of a felony may obtain compensation for any wrongful incarceration he endured because of the conviction. Under that statute, the Florida legislature set the amount of compensation for wrongful incarceration at $50,000 per year, which, prorated, is approximately $137 per day. While the statute does not apply in this case, it provides very general, non-binding guidance on the approximate value the Florida Legislature may attribute to time wrongfully spent in jail.

25. Whether Defendant's unlawful arrest and malicious prosecution were the proximate cause of Plaintiff's second arrest was the only legal issue that the parties seriously debated.1  The Court does not agree that Plaintiff's unfortunate choice to go into a Walmart and cut off his ankle monitor immediately after getting out of jail was reasonable, expected, and foreseeable. Thus, Defendant is not responsible for Plaintiff's entire period of incarceration – only the initial sixteen-hour portion.

26. Under the facts presented here, $500 dollars per hour is a reasonable calculation of damages to compensate Plaintiff for the unlawful, avoidable,

---

[1] The parties and the Court have been well served by the excellent legal work done by the lawyers on both sides in this matter.  Unlike many lawyers that practice in the field of civil litigation, the lawyers here approached the case from a practical, commonsense perspective and avoided unnecessary bickering over insignificant and unimportant issues.

completely unnecessary, and utterly inappropriate arrest and malicious prosecution he endured ($500 x 16 hours = $8,000).

27.     $150,000 is a reasonable calculation of damages for the pain and suffering caused by Defendant's violent, unjustified, completely unnecessary, and utterly inappropriate mishandling of Plaintiff's body, legs, face, nose, arms, and hands.

Accordingly, it is hereby

**ORDERED, ADJUDGED, and DECREED**:

(1)     The Clerk is directed to enter judgment in favor of Plaintiff Brennan Hanousek, and against Defendant United States of America, in the amount of **$158,000.**

(2)     After the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 28th day of April, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**